UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

09CR91S

v.

**Report &
Recommendation**

Kenneth Kasper and
Phyllis Kasper,

Defendants.

Before the Court is the defendants' joint omnibus motion seeking dismissal of the

indictment and various other forms of pretrial relief (Docket No. 8).

**Background**

On March 11, 2009, the Grand Jury for the Western District of New York issued an

indictment against defendants Kenneth and Phyllis Kasper charging that they filed a fraudulent

tax return reporting a loss of $7,366 for the calendar year 1999, when they had received income

of approximately $104,300.38 [Count I]; that they filed a false return for the calendar year 2000

claiming a loss of $2,687 when they had income of approximately 104,301.71 [Count II]; and

that they filed a false return for the calendar year of 2001 stating that they had a loss of $628

when they had income in the amount of $68,874.65 – all in violation of 26 U.S.C. §7206(1).

It is undisputed that over a period of time prior to the indictment, the government and the

defendants had been engaged in extensive discussions concerning the filing of income tax returns. The charges in this case involve the tax treatment of monies which the Internal Revenue Service ("IRS") contends should have been declared as income by the Kaspers on their personal income returns. Thus, the IRS contends that the Kaspers filed false income tax returns for the years 1999, 2000 and 2001 by failing to include income realized from two closely held shell corporations – 1660 Grand Island Boulevard Inc. ("1660 GIB") and Exit 12 Enterprises, Inc. ("Exit 12"). The government asserts that the Kaspers realized substantial rental income from properties Kenneth Kasper had leased to two tourism companies: Niagara Majestic Tours ("NMT") and Grey Line. (Docket No. 14 at page 11). Kasper, through Exit 12, also leased a billboard on property in Pennsylvania to an Ohio fireworks company ("BJ Alan") and failed to report this income. (Docket No. 14 at page 12). The government alleges that over the three year period at issue in this case NMT paid Kasper (through 1660 GIB) $403,523.12; Grey Line paid Kasper (through Exit 12) $290,854.50; and that BJ Alan paid Kasper (through Exit 12) $27,000. (Docket No. 14 at page 12). The government notes that because these rental payments were made to corporate lessors/payees, NMT and Grey Line were not required to issue Form 1099 statements regarding such payments. The government charges that this income was never properly reported, and that the Kasper's tax returns for the 1999-2001 tax years were false. For the period involved in this action, no tax returns were filed on behalf of 1660 GIB (Docket No. 14 at page 15) and the income paid by Grey Line and BJ Alan was not reported either on the Kasper's joint return or on any filing on behalf of Exit 12. (Docket No. 14 at page 16)[1]. Thus,

---

[1] The government contends that Exit 12 was already an inactive corporate shell prior to the filing of the 1999 tax returns. (Docket No. 14 at page 9).

the government contends that approximately $700,000 of income was realized, but not reported, by the Kaspers over the three year period.  Further, the government alleges that the transaction between Kasper and Burgdorf constituted a sale and that the consulting agreement pursuant to which payments were to be made to Burgdorf was actually a purchase agreement.

The defendants contend that distributions to the Kaspers were not "income" required to be reported. Further, the defendants argue that the government failed to credit properly deducted business expenses. It appears that at some point prior to 1999, Kenneth Kasper operated a tourist information business in the area of Niagara Falls, New York.  The defendants contend that during the late 1980s, Kenneth Kasper obtained a one-third share in 1660 GIB which owned a tourist information center at 1661 Grand Island Boulevard, Grand Island, New York.  Joseph Burgdorf and Ben Tirabassi also each owned one-third of 1660 GIB. (Docket No. 8 at page 4).  The defendants state that in the early 1990s, Kasper entered into an agreement for Burgdorf to purchase Kasper's share of 1660 GIB for approximately $100,000.00.[2]  According to the defendants, Kasper did not anticipate immediate payment for the shares.  After several years of not receiving payments, "Kasper and his corporation" sued Burgdorf and 1660 GIB. (Docket No. 8 at page 4)  The defendants stated that a settlement was reached on June 25, 1998 in which Burgdorf[3]  agreed to sell 1660 GIB back to Kasper.[4] Notwithstanding the alleged sale of the

---

[2]   Burgdorf was also arranging to purchase Tirabassi's interest in 1660 GIB as well. (Docket No. 8 at page 4).

[3]   Burgdorf had apparently issued additional shares of 1660 GIB to his brother, Daniel Burgorf. As part of the settlement,  Joseph Burgdorf caused his brother to transfer those shares to Kasper as well.  (Docket No. 8 at pages 4-5).

[4]   The government contends that the instrument through which Kasper reacquired 1660 GIB was "styled as a consulting agreement although, in actuality, it was a purchase of the

corporation back to Kasper, the government contends, and the defendants do not dispute, that 1661 GIB remained in Burgdorf's name subsequent to the purported sale until it was dissolved by New York State on September 23, 1998 and that Kasper took no affirmative action to revive the corporation or to transfer the corporation to his own name. (Docket No. 14 at page 14). The settlement agreement also provided that Kasper and Burgdorf would enter into purported non-competition and consulting agreements pursuant to which Kasper allegedly paid Burgdorf $68,674.98 in 1999; $77,169.95 in 2000; and $61,948.07 in 2001 (totaling $207,793 over the three years).

The defendants contend that the government presented false and misleading evidence to the grand jury because it did not inform the jury that the payments to Burgdorf were properly deducted from the Kasper's "corporate earnings". (Docket No. 8 at page 5).[5] The Kaspers also contend that §7206(1) is unconstitutionally vague on its face, and as applied in this case; that Counts One and Two are barred by the applicable statute of limitations; and that each count of the indictment fails to state an offense.[6]

_____

corporation and the adjacent land at 1661 Grand Island Boulevard." (Docket No. 14 at page 13-14). NMT subsequently leased the building located on 1661 Grand Island Boulevard to facilitate its tourism business. (Docket No. 14 at page 14).

    [5]  Again, the defendants do not identify the corporate entities being referenced.

    [6]  The non-dispositive relief sought by the defendants is the subject of a separate Decision & Order.

**The Defendants Claim that the Government Knowingly
Presented Misleading Evidence to the Grand Jury**

The defendants claim that until mid-December 2008, they believed that the government had given the Kaspers credit for all allowable expenses and deductions and would seek to establish that the Kaspers failed to report substantial corporate income even after the expenses and deductions were subtracted. The defendants argue that the government failed to advise the Grand Jury that payments were made to Joseph Burgdorf in the amount of $68,674.98 for 1999, $77,169.95 for 2000, and $61,948.07 for 2001, thus reducing the Kasper's income for each of those years; and that the failure to so advise the Grand Jury requires dismissal of the indictment.

The parties acknowledge that prior to the indictment being issued in this case, counsel on behalf of the Kaspers sought to negotiate a civil settlement regarding the issues underlying this action. After some discussion, on January 25, 2008, the Tax Division of the United States Department of Justice ("DOJ") referred the case to the United States Attorney's Office for the Western District of New York for criminal prosecution. (Docket No. 14 at page 3). Still prior to the issuance of any indictment, the United States Attorney's Office continued pre-indictment plea negotiations with counsel for the Kaspers. The government states that during the course of these negotiations, the statute of limitations relating to the 1999 tax return was extended numerous times in order to facilitate plea discussions. (Docket No. 14 at page 3). It appears that the defendants continued to seek a civil resolution of this case and proposed that one of the "offending" corporations[7] would plead guilty to a felony and prosecution against the Kaspers would be deferred, and ultimately dropped, upon the agreement of a civil resolution. (Docket No.

---

[7] No specific corporate entity was identified. (Docket No. 14, Exhibit A).

5

14, Exhibit A). The DOJ Tax Division, with whom the ultimate decision as to whether to accept any such resolution rested, determined that the proposed deal was unacceptable. (Docket No. 14 at page 4-5). The defendants then suggested that the matter be resolved by Kenneth Kasper agreeing to a plead guilty to a misdemeanor. This plea deal was also rejected by the DOJ Tax Division. (Docket No. 14, Exhibit B). A further meetings was held on December 17, 2008. At that meeting, the government reiterated its offer that all charges against both defendants could be resolved by Kenneth Kasper agreeing to plead guilty to a single felony count. The government contends that it was at this meeting that the defendants first raised an alleged defense based upon Boulware v. United States, 552 U.S. 421, 128 S.Ct 1168 (2008). The defendants contend that, under Boulware, the IRS would have to determine whether any of the income received by the Kaspers from 1660 GIB (or, presumably Exit 12) was taxable income in making its calculations regarding the defendants tax returns. (Docket No. 8 at page 10-12). In this regard, the defendants contend that the government was required to advise the Grand Jury that the payments made to Burgdorf were tax deductible.

In Boulware, a case emanating in the Ninth Circuit, the defendant sought to raise the "return-of-capital" affirmative defense in the face of an indictment charging him with tax evasion.[8] The defendant contended that the monies he received constituted a return of capital, which was not taxable, and thus, no tax deficiency existed. The government moved, *in limine*, to

---

[8] The defendant in Boulware was also charged with filing false tax returns. The Supreme Court noted that "the Courts of Appeals are unanimous in holding that §7206(1) 'does not require the prosecution to prove the existence of a tax deficiency'" (although the Court recognized that the nature and character of funds received can be critical in determining whether §7206(1) has been violated). Boulware, 128 S.Ct. at 1178, n.9. The Supreme Court "acceded to the government's "working assumption" in that case that the §§7201 and 7206(1) convictions would stand or fall together in that case. Id.

bar evidence in support of Boulware's return-of-capital theory. In the Ninth circuit, prior to the

Supreme Court's decision in <u>Boulware</u>, an affirmative defense to a tax evasion charge based

upon a claim that monies received constituted a return of capital, instead of taxable income,

could only be offered by the defendant only upon "some demonstration on the part of the

taxpayer and/or the corporation that such [a distribution was] intended to be such a return [of

capital]"[9] <u>Boulware</u>, 128 S.Ct. at 1174. The District Court granted the motion *in limine*. Upon

appeal, the Supreme Court held that a defendant in a tax evasion case need not demonstrate that

either he or the corporation that distributed funds to him intended a capital return when the

distribution occurred, for the purpose of defeating the tax deficiency element of the tax evasion

offense. The Supreme Court made it clear, for purposes of a tax evasion case, there is no

criminal tax evasion without a tax deficiency. <u>Boulware</u>, 128 S.Ct at 1178. Even prior to the

Supreme Court's decision in <u>Boulware</u>, the law in the Second Circuit did not require a defendant

to demonstrate that a distribution was intended to be a return of capital before allowing a "return-

of-capital" defense. Indeed, in its decision in <u>Boulware</u>, the Supreme Court quoted the Second

Circuit in holding that "[w]ithout the deficiency there is nothing but some act expressing the will

to evade, and, under § 7201, acting on "bad intentions, alone, [is] not punishable," <u>Boulware</u>, 128

S.Ct at 1178 quoting <u>United States v. D'Agostino</u>, 145 F.3d 69, 73 (2d. Cir. 1998). Thus,

<u>Boulware</u> did not create new law within the Second Circuit.

  The decision in <u>Boulware</u> does not impact the instant case. The defendants here have

been charged with filing false tax returns, not tax evasion. The decision at the heart of <u>Boulware</u>,

---

[9]   The government's position in that case was based upon the Ninth Circuit's holding in
<u>United States v. Miller</u>, 545 F.2d. 1204 (9th Cir. 1976).

was whether the defendants must demonstrate contemporaneous intent before being able to present a "return-of-capital" defense is not present here. Section 7602(1) is essentially a perjury statute. The elements of an offense under §7206(1) are: "(1) that the defendant made or caused to be made, a federal income tax return for the year in question which he verified to be true; (2) that the tax return was false as to a material matter; (3) that the defendant signed the return willfully and knowing it was false; and (4) that the return contained a written declaration that it was made under the penalty of perjury." United States v. Pirro , 212 F.3d 86, 89 (2d Cir.2000). The government does not have to prove "every dollar of income alleged by the indictment to have been concealed, proof of some lesser amount will sustain a verdict if, ..., it remains material." United States v. Cole, 463 F.2d 163, 167 (2d Cir.1972), *cert. denied,* 409 U.S. 942 (1972). The materiality relates to whether there is a misstatement on the return, it does not require the evasion of a substantial tax. United States v. Citron, 783 F.2d 307, 313 (2d Cir. 1986). United States v. Helmsley, 941 F.2d 71, 92 (2d Cir. 1991)(False statements about income do not have to involve substantial amounts in order to violate this statute.); United States v. Hedman, 630 F.2d 1184, 1196 (7th Cir.1980), *cert. denied,* 450 U.S. 965 (1981)(Any false statements relating to gross income, irrespective of the amount, constitute a material misstatement in violation of § 7206(1)). See also United States  v. DeGroote, 122 F.R.D. 131, 142 -143 (W.D.N.Y.,1988). Also, the source of unreported income is "not essential to the proof of the violation charged." United States v. Rodriguez, 545 F.2d 829, 832 (2d Cir.1976).

Much of the defendants argument assumes that Boulware requires a finding that the payments made to Burgdorf  are deductible, and that such a finding would preclude the false return charges against the Kaspers.  This is a misreading of Boulware.  According to Boulware, a

defendant may assert the affirmative "return-of-capital" defense without having to demonstrate contemporaneous intent for such tax treatment at the time of the distribution.[10] <u>Boulware</u> does not hold that the government must agree with the defendants' characterization of the distribution as qualifying as a return of capital or that the government could not challenge such tax treatment based upon an argument other than a lack of contemporaneous intent. Further, <u>Boulware</u> does not preclude the government from challenging the deductibility of certain expenses (such as the Burgdorf payments) and attempting to prove that a consulting agreement is, in fact, a purchase agreement for tax purposes. The government disputes the nature and character of the transaction between Kasper and Burgdorf as well as the tax implications of the payments made by Kasper to Burgdorf. These factual and legal disputes are not to be resolved by way of the instant motion (and could not be so resolved based upon the record before the Court). In any event, the government was not obligated to present the Grand Jury with the Kaspers' explanation as to the nature of the payments to Burgdorf.[11] The Supreme Court has held that a District Court may not dismiss an otherwise valid indictment on ground that government failed to disclose to grand jury "substantial exculpatory evidence" in its possession. <u>United States v. Williams</u>, 504 U.S. 36, 54-55 (1992). Moreover, it appears that the defendants concede that even deducting the payments to Burgdorf, the returns filed by the Kaspers for 1999 and 2000 would still be

---

[10] <u>Boulware</u> also held that a tax deficiency is required to sustain a tax evasion case. <u>Boulware</u>, 128 S.Ct at 1178. <u>Boulware</u> does not hold that a tax deficiency is required to support a false filing case pursuant to §7206(1).

[11] Prior to the indictment, counsel for the defendants asked that the government present the Grand Jury with information relating to the payments made to Burgdorf. (Docket No. 10, Exhibit F). The government responded that it disagreed with the defendants characterization of the material as being exculpatory. (Docket No. 10, Exhibit G).

incorrect. (Docket No. 8 at page 9). Ultimately, it will be the government's burden, at trial, to prove the elements of a §7206(1) violation as to each count. As discussed above, this does not necessarily require a demonstration of a tax deficiency. The instant case does not involve, as did <u>Boulware</u>, a motion *in limine* to preclude the defendants from presenting evidence or argument to the jury to the effect that the payments made to Burgdorf may impact whether the tax returns at issue included false statements. The defendants have not established a basis for the dismissal of the indictment based upon the material presented to the Grand Jury.

**The Defendants Assert that Each Count Fails to State an Offense**

The defendants argue that each count of the indictment fails to state an offense because the counts do not specifically allege that the Kaspers knowingly and willfully made any false statements to the IRS; or that the Kaspers filed the returns in question, or caused them to be filed. (Docket No. 8 at page 18).

Section 7206 provides:

> Any person who (1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; ... shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 3 years, or both, together with the costs of prosecution.

Count One states, in part, that the defendants "did willfully make and subscribe a joint U.S. Individual Income Tax Return, Form 1040, for the calendar year 1999, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the

Director, Internal Revenue Service, which said income tax return they did not believe to be true and correct as to every material matter ... ." (Docket No. 1 at page 1). Count Two of the Indictment states similar language, differing only in that it relates to the tax year 2000. (Docket No. 1 at page 2). Similarly, Count Three includes similar language differing only in that it relates to the 2001 tax year. (Docket No. 1 at page 2-3).

The language of each of the counts of the indictment tracks the language of the statute and is sufficient. Further, the language of each count states that each return was filed with the IRS. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' " United States v. Dale, 782 F.Supp. 615, 621 -622 (D.D.C.,1991) quoting Hamling v. United States, 418 U.S. 87, 117 (1974) (internal citations omitted). See also United States v. Pansier, 576 F.3d 726, 737 (7th Cir. 2009)(The indictment here charged that Pansier willfully made and subscribed false Forms 8300, 'Report of Cash Payments over $10,000 Received in a Trade or Business, each of which contained a written declaration that it was signed under the penalties of perjury and none of which the defendant believed to be true and correct as to every material matter. The indictment, then, stated all the necessary elements of a charge under §7206(1)"); United States v. Bishop, 264 F.3d 535, 546 (5th Cir. 2001)(The indictment tracked the language of the §7602(1) and was deemed sufficient).

**Vagueness in the Indictment**

The defendants assert that the indictment is impermissibly vague because it does not allege the "when and the where" of the defendants' knowledge of the falsity. (Docket No. 8 at page 26). The defendants present no authority which requires that the indictment provide such information. Generally speaking, the sixth amendment requires that the indictment inform the defendant of the nature and cause of the accusation. United States v. Piccolo, 723 F.2d 1234, 1238 (6th Cir.1983), *cert. denied,* 466 U.S. 970 (1984). The Supreme Court has held that an indictment is intended to guarantee two principal protections, and is to be measured by two criteria: (1) whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and (2) whether, in case any other proceedings are taken against him for a similar offense, "whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." Russell v. United States, 369 U.S. 749, 763-764 (1962)(citations omitted). See also United States v. Gioiosa, 1991 WL 15149, 3 (6th Cir. 1991). As noted above, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' " United States v. Dale, 782 F.Supp. 615, 621 -622 (D.D.C.,1991) quoting Hamling v. United States, 418 U.S. 87, 117 (1974) (internal citations omitted). Here, the language included in each of the counts of the indictment track the statute and set forth all of the elements necessary to constitute the offense. The motion to dismiss the indictment based upon vagueness should be denied.

**Constitutionality of §7601(1)**

The defendants contend that §7206(1) is unconstitutional on its face because it makes no reference to the filing of a false tax return. (Docket No. 8 at page 27). That a return is filed with the IRS is incorporated in the "making" language of §7206(1). See United States v. Gilkey, 362 F.Supp. 1069, 1071 (E.D.Pa.1973)("a taxpayer does not 'make a return,' until it is filed with the Internal Revenue Service").

The Supreme Court has held that "(i)t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Powell, 423 U.S. 87, 92 (1975) quoting United States v. Mazurie, 419 U.S. 544, 550 (1975). See also Chapman v. United States, 500 U.S. 453, 467 (1991). Thus, the court need not address the facial insufficiency argument. Notwithstanding, "a penal statute is not void for vagueness if it defines 'the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement," Arriaga v. Mukasey, 521 F.3d 219, 222 (2d Cir.2008) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). The statute here clearly defines the offense, making a materially false statement, return, or document signed under penalty of perjury. The language of the statute is sufficient so that an ordinary person would understand the conduct which is prohibited by §7206(1).

The defendants also contend that the statute is unconstitutional as applied in this case because the "government is seeking to use the statute against the Kaspers in the absence of any allegations that either of them knowingly made any false statement to the government." (Docket No. 8 at page 30). As quoted above, the indictment, which tracks the language of the statute,

states that the defendants "did willfully make and subscribe" tax returns under the penalty of perjury which "they did not believe to be true and correct" in that the returns stated a total loss when they "well knew and believed" that they had positive income. As discussed above, an individual does not "make" a return until it is filed with the IRS. Again, an ordinary person would understand what is prohibited by the statute. The defendants have not demonstrated that the statute was arbitrarily applied against them. Arriaga, 521 F.3d at 222.

The motion to dismiss the indictment based upon the claim that §7206(1) is unconstitutional on its face, or as applied, should be denied.


**Statute of Limitations**

The defendants contend that Counts One and Two of the indictment are barred by the applicable statute of limitations. (Docket No. 8 at page 30). It is undisputed that the statute of limitations for a violation under § 7206(1) is six years. See 26 U.S.C. §6531(5). Count One states that the defendants did willfully make and subscribe the tax return for 1999 "on or about" May 1, 2001. Count Two states that the return for the 2000 tax year was made and subscribed "on or about" July 26, 2001. The indictment was issued on March 11, 2009.

Although the defendants returns for 1999 and 2000 were dated in 2001, it appears undisputed that they were not received by the IRS until April 19, 2003 (for the 1999 return) and April 1, 2003 (for the 2000 return). For statute of limitations purposes as to an alleged violation of §7206(1), the time begins to run on the date that the return is filed with the IRS. "A violation of 26 U.S.C. § 7206(1) is complete when a taxpayer files a return... ." United States v. Marashi, 913 F.2d 724, 736 (9th Cir.1990); United States v. Habig, 390 U.S. 222, 223 (1968)( "The

offenses involved in Counts 4 [violation of § 7201] and 6 [violation of § 7206(2) ] are committed at the time the return is filed.”). See also  Gilkey, 362 F.Supp. at 1071 (E.D.Pa.1973); United States v. Horwitz, 247 F.Supp. 412, 413-14 (N.D.Ill.1965).  “Were it otherwise, the individual making the return could substantially shorten the length of the statutory period by subscribing the return months before it was filed and then retain it so the statute of limitations would be running long before the government had any notice of the offense.” Horwitz, 247 F.Supp. at 414-15. Here, inasmuch as the returns underlying Counts One and Two were received by the IRS in April of 2003, the March 11, 2009 indictment was issued within the six-year statute of limitations as to both counts.

The fact that the indictment states the dates which are noted on the returns, and not the dates on which the returns were received by the IRS, does not require dismissal of the indictment. Generally, a mistake as to a date in an indictment is not fatal to the indictment. “When the date specified in the indictment is not a material element of the charge, strict chronological specificity or accuracy is not required, United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir.1994), and, even if the date in the indictment is incorrect, it does not bar conviction. United States v. Prescod, 59 Fed. App'x 526 (4th Cir.2003).” Laguerre v. United States, 2007 WL 3551948 (W.D.Va. 2007). See also United States v. Young, 862 F.2d 815, 818-19 (10th Cir.1988) (“even if the date allegation contained in the indictment is incorrect, it will not bar conviction” if “time is not an essential element of the offense”; “even though there be a defect in the allegation as to time, it is one of form only”); United States v. Lowery, 2006 WL 1722404 (E.D.Pa. 2006)(The Third Circuit has held that where a simple clerical error occurs, such as alleging an incorrect date on an indictment, and the defendant is not substantially prejudiced by the amendment, the

amendment is harmless error and the defendant's Fifth Amendment rights have not been violated.); United States v. Ridens, 362 F.Supp. 358 (3d Cir.1973) (holding that stating the incorrect date for the offense on the Indictment was simply a clerical error and thus did not prejudice the defendant). In United States v. Bashir-Elahi, 1987 WL 37035 (4th Cir. 1987), the indictment charged the defendant with willfully attempting to evade taxes for 1979 by filing a false and fraudulent income tax return on June 10, 1980. However, the tax return filed by the defendant on June 10, 1980 actually reported a larger amount of taxable income and a larger amount of tax due than the government claimed. The Court held that "[t]he incorrect date and amounts were not material, insofar as the indictment was concerned, to either the original return or the amended return, both of which were in evidence. The amount of unreported income was exactly the same under either return. The defendant was not charged with failure to file a return but rather with filing a fraudulent return and therefore the date of the filing was not material since both returns failed to report the same amount of income." Bashir-Elahi, 1987 WL 37035 at *1.

To the extent the defendants seek dismissal of Counts One and Two based upon statute of limitations grounds, the motion should be denied inasmuch as the defendants have articulated no prejudice relating to the fact that the indictment lists the dates stated on the respective underlying returns and not the dates upon which the returns were received by the IRS.

**The Defendant Asserts that Count Three Fails to Allege an Offense**

Count Three of the indictment alleges that the defendants willfully made and subscribed to a tax return which "reported a total loss of $628, on line 22, whereas, as the defendants then and there well knew and believed, they had received taxable income of approximately

16

$68,874.65." The defendants contend that this count fails to state an offense because "Line 22 is not the place to report 'taxable income'" (Docket No. 8 at page 31).[12]  A fair reading of the language of the indictment would not result in the interpretation offered by the defendants.  The language of the indictment does not suggest that the Kaspers were required to report taxable income on Line 22 of the subject return.  Instead, the indictment states that the Kaspers reported a loss (which is stated on Line 22) when in fact they allegedly had taxable income that was not reported in the return.  The government was not required to specify which line of the return taxable income was to be reported. The motion to dismiss Count Three on this ground should be dismissed.

**Motion to Disqualify Government's Counsel**

The defendants seek to disqualify Assistant United States Attorney Gregory L. Brown, Esq. from further participation in this case claiming that they intend to call Brown as a witness relating to "the government's state of mind concerning the appropriateness of allowing" the deduction of the payments made by the Kaspers to Burgdorf. (Docket No. 8 at page 33).  In the extensive pre-indictment plea discussions in this matter, it appears that counsel for the defendants, Mark Uba, Esq., asked Brown whether the Kaspers would be credited for the payments made to Burdgorf.  Brown concedes that he was asked by Uba whether the Kaspers were given a tax credit for the deductions they claimed were allowable under the defendants' Boulware analysis.   Brown states that his recollection is that he responded;  "I did not know, but

---

[12]   Although Counts One and Two of the Indictment include similar language, the defendants do not extend this argument as a basis for dismissal of those counts.

that if they were entitled to it, it would have certainly been credited. I further stated that I would check with the case agent to make sure." (Docket No. 14 at page 28). Upon checking with the case agent, Brown determined that no such tax credit had been given because the IRS did not regard the agreement between Kasper and Burgdorf as a Consulting Agreement (the IRS contends it is actually a purchase agreement). Brown states that he contacted Uba and "advised him that I had misspoken and that the Kaspers had not, in fact, been credited for the payments made to Burgdorf." (Docket No. 14 at page 28).

The exacts dates and context of the discussions are not provided in the record. It appears that the pre-indictment discussions were attempts at arriving at a civil settlement or plea agreement (or some combination). The parties do not address whether statements made in such discussions are admissible. Correspondence from Uba to DOJ Tax Division attorneys suggests that at least some of the discussions were "without prejudice" and "inadmissible settlement communication." (Docket No. 10, Exhibit E). Also unaddressed is the question of whether Uba is also a potential witness who would be subject to disqualification pursuant to the attorney-witness doctrine. If, for example, Brown's recollection of the discussions differed from Uba's, would Uba be required to provide contrasting testimony? If Uba's examination of Brown demonstrated personal knowledge of the events, would the government not wish to cross examine Uba as to the context of the discussions?

"The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." United States v. Bolden, 353 F.3d 870 (10th Cir. 2003) quoting Bullock v. Carver, 910 F.Supp. 551, 559 (D.Utah 1995). Courts have allowed disqualification of government counsel only in limited circumstances. Young v. United States,

481 U.S. 787, 807 (1987) (actual conflict of interest because appointed prosecutor also

represented another party); United States v. Heldt, 668 F.2d 1238, 1275 (D.C.Cir.1981) (bona

fide allegations of bad faith performance of official duties by government counsel in a civil case);

United States v. Prantil, 764 F.2d 548, 552-53 (9th Cir.1985) (prosecutor who will act as a

witness at trial).

Most of the cases discussing this issue revolve around the possibility that the

government's attorney is a possible fact witness with respect to the substantive charges in the

case.   In Prantil, for example, the defendant, Frank Prantil, an attorney, was charged with

harboring a fugitive, perjury, false statements and being an accessory after the fact.  All of the

charges emanated from actions Prantil took while representing a criminal defendant, Betty

Powell.  The Assistant United States Attorney prosecuting Prantil, Charles Gorder, was the same

Assistant United States Attorney involved in the prosecution of Powell. Gorder was involved

with discussions with the bond agent regarding the adequacy of Powell's bond collateral which

gave rise to the false statement charges against Prantil. Gorder conducted the examination of

Prantil before the grand jury and in bond proceedings which served as the basis for the perjury

charges.  Gorder negotiated directly with Prantil regarding the surrender of a fugitive, Ronald

Powell, which gave rise to the harboring and accessory charges lodged against Prantil.  The Court

held that Gorder was a witness to, and indeed a participant in, some aspect of all the events

alleged in the indictment against Prantil.  As such, the Court vacated Prantil's convictions

holding that the District Court abused its discretion in refusing to recuse Gorder from

participation in the prosecution of Prantil.  Prantil, 764 F.2d. at 557.

The instant case is distinguishable from Prantil. Here, Brown is not alleged to be a fact

witness to any conduct on the part of the Kaspers. Instead, the defendants suggest that in the context of the pre-indictment discussions Brown made conflicting representations about his own understanding of the tax implications of the Burgdorf payments which would relate to the government's "state of mind" concerning the appropriateness of allowing the expenses. The defendants have articulated no basis for finding that the government's state of mind is relevant to the charges against the defendants. The defendants also contend that Brown's testimony in this regard would bear upon issues of "falsity, materiality, and willfulness" on the part of the defendants. (Docket No. 8 at page 34). It should be noted that any statements made by Brown – which the defendants have not identified with specificity – were apparently made in 2008. The indictment relates to conduct attributed to the defendants in 2003. The defendants have not demonstrated how "Brown's testimony would relate to the government's knowledge that the Kaspers had identified the payments to Mr. Burgdorf on their 2002 income tax return." (Docket No. 8 at page 34). The defendants suggest, in conclusory fashion, that they are "entitled to show through Mr. Brown's testimony that even the government's own counsel believed, as late as December 2008, that the payments to Mr. Burgdorf could be deducted as allowable corporate expenses in determining corporate earnings and profits." (Docket No. 8 at page 34). The defendants argue that Brown "did not question the deduction of those expenses until being informed by the IRS agent (after virtually all the government's evidence already had been presented to the grand jury and approximately 90 days before the indictment was returned) that the [IRS Criminal Investigation Division] was refusing to deduct them." (Docket No. 8 at page 34). The defendants do not proffer any specific statement by Brown in support of this proposition. Indeed, the defendants have not presented any specific statement by Brown in which

he committed the government to accepting the defendants' interpretation of the tax implications of the Burgdorf payments and the record before the Court does not reflect that the defendants acted in reliance upon any statements made by Brown in connection with the filing of the underlying tax returns. The defendants point to Brown's May 29, 2008 letter in which he provided copies of pre-discovery documentation relating to the Kaspers. In that letter Brown states, in relevant part: "It is the government's belief that the Kaspers knowingly and willfully failed to report substantial corporate income earnings on their federal income tax returns from 1999 though 2001." (Docket No. 10, Exhibit A). Such a statement does not support the defendants' argument. The Court cannot disqualify the government's attorney based upon conclusory allegations that the defendants intend to call the attorney as a material witness. The defendants have not demonstrated that any confusion or miscommunication between Brown and Uba during the pre-indictment plea negotiations in 2008 as to the tax treatment of the Burgdorf payments goes to any of the elements of the charges against the defendants. Inasmuch as the defendants have not identified that Brown could provide testimony relevant to the issues to be tried in this case, the motion to disqualify Brown as counsel for the government in this case should be denied.[13]

---

[13] The defendants also point to the fact that the Court disqualified Gary Borek, Esq. from participating as counsel in an unrelated case, United States v. Benacquista, 08CR94. In that case, the government contended that Borek responded to the auditor's inquiries and provided answers to two questions which the government contends were false (and which the government intends to use against the defendant at trial); allegedly provided a purported tax return for the defendant which was not her actual return (which the government also intends to use at trial). The government also alleged that Borek's actions furthered the defendants' conspiracy to defraud the United States. In that case, the Court concluded that inasmuch as Borek had transmitted documents and made representations which the government argues was part of the conspiracy to defraud, an actual conflict existed between Borek and his client. In the instant case, the defendants have not identified comparable concerns emanating from Brown's involvement in the

**Conclusion**

Based on the above, it is recommended that the motion to dismiss the indictment be denied and that the motion to disqualify the government's attorney should also be denied.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v.

---

pre-indictment plea discussions.

<u>Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

_____ _/s/ Hugh B. Scott_
United States Magistrate Judge
Western District of New York

Buffalo, New York
November 6, 2009